**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

NIGHT BOX
FILED

JUN 2 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

TYCO FIRE & SECURITY, LLC,
PHILLIP McVEY, and
GEORGE AZZE,

             Plaintiffs,

vs.

JESUS HERNANDEZ ALCOCER,
JORGE HERNANDEZ TORRES,
EMILIO ESPINOLA,
RAIF SHAHIN ISAAC,
GONZALO QUESADA SUAREZ,
DAVID CALDERON ISLAS,
LUIS MONTIEL VILCHIS,
HORACIO CANTU DIAZ, and
JOHN DOES 1 THROUGH 10,

             Defendants

# 04-80516

Case No. **CIV-COHN**

**MAGISTRATE JUDGE
SNOW**

## COMPLAINT

    Plaintiffs through their undersigned attorneys hereby file this complaint against Defendants and allege the following:

### SUMMARY OF CLAIM

    1.  This action stems from Defendants' bare-knuckled attempt to extort and coerce Plaintiffs to pay them money that is not owed and to release legitimate claims that Plaintiffs have against them.  These threats have been intentionally directed to Plaintiffs in Florida via telephone, e-mail and other means.  In these communications to Florida, Defendants have threatened the commencement of numerous fraudulent criminal actions against and physical harm to Plaintiffs and their personnel, and the disruption of Plaintiffs' business in Latin America.  Defendants have threatened to continue their

1



wrongful activities unless Plaintiffs give in to their threats by paying them U.S. $73 million. By this action, Plaintiffs seek relief from Defendants' unlawful conduct.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction because all defendants are aliens, 28 U.S.C. §1332(b). This court also has subject matter jurisdiction over Plaintiffs' RICO claims on the basis of federal question, 28 U.S.C. §1331, and over the pendent state law claims on the basis of supplemental jurisdiction, 28 U.S.C. § 1367(a). Because all Defendants are aliens, venue is proper in this district under 28 U.S.C. §1391(d). This court has personal jurisdiction over the defendants pursuant to the Florida long-arm statute, FSA 48.193(1)(b), because the Defendants have committed intentional torts by means of telephonic, electronic, and written communications into Florida.

## THE PARTIES

3. Plaintiff Tyco Fire & Security LLC ("TFS"), a Nevada limited liability company with its principal place of business in Boca Raton, Florida, manages Tyco Fire and Security, which is a fire protection and electronic security business, with residential, commercial and government customers around the world. The largest business unit that TFS manages is ADT, a worldwide provider of electronic security services and event monitoring. These and other security services are provided in twenty-seven countries, including the Federal Republic of Mexico.

4. Plaintiffs Phillip McVey ("McVey") and George Azze ("Azze") are individuals, citizens of the United States and domiciled in Florida. These individual plaintiffs are managers or officers of ADT or TFS.

5. Defendants Jesus Hernandez Alcocer ("Jesus Hernandez"), Jorge Hernandez Torres ("Jorge Hernandez"), Emilio Espinola ("Espinola"), Raif Shahin Isaac ("Shahin"), Gonzalo Quesada Suarez ("Quesada"), David Calderon Islas ("Calderon"), Luis Montiel Vilchis ("Montiel"), and Horacio Cantu Diaz ("Cantu") are individuals and Mexican citizens. Jesus Hernandez has a residence in Miami Beach, Florida and holds a Florida driver's license. Jesus Hernandez also has a vehicle registered in Florida. Espinola has a residence in Vail, Colorado. Defendants John Does 1 through 10 are individuals, actual names presently unknown, who assisted the named defendants in manners known and unknown. Plaintiffs reserve the right to amend this complaint to add the actual names of John Does 1 through 10 as they become known.

## FACTS

### *The Termination of the Mexican Dealers*

6. ADT is in the business of monitoring security alarms in homes and businesses worldwide. ADT historically obtained alarm monitoring customers by direct sales, by the acquisition of other alarm monitoring companies, and by purchasing accounts from authorized dealers.

7. In August 2002, TFS and ADT terminated selected ADT dealers in the United States, Latin America, Europe, and Asia. Among these were 52 Mexican dealers, who were terminated by ADT's Mexican affiliate ("ADT Mexico"). These dealers were terminated in accordance with the terms of their agreements with ADT Mexico.

8. Four of the 52 terminated Mexican dealers were City Watch S.A. de C.V. ("City Watch"), run by Defendant Shahin, F.B.I. Alarmas, S.A. de C.V. ("FBI"), run by Defendant Quesada, Servicios Administrativos de Emergencia S.A. de C.V.

3

("Servicios"), run by Defendants Montiel and Cantu, and L.D.C., S.A. de C.V. ("LDC"), run by Defendant Calderon. Upset by TFS and ADT's management decision to terminate their contracts, these five Defendants became intent on retaliation.

### *The Beginning of the Criminal Conspiracy*

9. Under the terms of the dealer's agreements, the parties are required to submit all disputes, including disputes regarding termination, to binding arbitration. However, realizing that their companies had no valid claims against ADT or TFS, Defendants Shahin, Quesada, Montiel, Cantu, and Calderon began exploring extra-legal methods to retaliate against ADT for terminating their companies. In order to execute these actions, they enlisted the services of Defendants Jesus Hernandez and Jorge Hernandez.

10. For a fee, Jesus Hernandez uses his "influence" to help parties to resolve business disputes. Through Montiel, Jesus Hernandez decided to "help" the terminated dealers in their effort to retaliate against ADT and TFS. Jorge Hernandez is a former employee of TFS who was responsible for ADT's operations in Latin America. He was terminated on February 28, 2002. Jorge Hernandez developed a close relationship with Shahin, Quesada, Montiel, Cantu and Calderon while working in this capacity for TFS, and was responsible for recruiting some of these dealers.

11. In 2002, Jesus Hernandez and Jorge Hernandez entered into agreements with Shahin, Quesada, Montiel, Cantu and Calderon, and with other representatives of terminated dealers in Mexico and elsewhere in Latin America. Under these agreements, Jesus Hernandez and Jorge Hernandez were given authority to represent the dealers and to act on their behalf on "legal and collection matters." Jesus Hernandez agreed to contribute to payment of their legal and other fees in connection with the actions against

the Plaintiffs and other ADT and TFS executives, and the dealers agreed to pay Jesus Hernandez a portion of any sums collected from the Defendants. Also, Shahin, Quesada, Montiel, Cantu, and Calderon, and the other representatives of terminated dealers agreed to share information and to coordinate their strategy against the Plaintiffs.

12. When entering into these agreements, Shahin, Quesada, Montiel, Cantu, Calderon, and the other terminated dealer representatives acted with scienter, knowing or recklessly disregarding that Jesus Hernandez and Jorge Hernandez would use unlawful means to extort money from Plaintiffs. Specifically, these Defendants agreed that they would threaten to file false criminal prosecutions of TFS and ADT executives and to physically harm such executives unless TFS and ADT paid them over US $73 million. On the basis of these agreements, a conspiracy to extort money from Plaintiffs was formed between Jesus Hernandez, Jorge Hernandez, Shahin, Quesada, Montiel, Cantu, Calderon, and other terminated dealer representatives.

13. Defendant Espinola, a former employee who was terminated by Tyco Services, SA de CV, later joined in the conspiracy. With knowledge of the conspiracy's criminal purpose, Jorge Hernandez and Espinola agreed to convey Defendants' threats and demands to ADT and TFS management via telephone and e-mail to Florida and to provide Defendants with false testimony and with confidential business information about ADT and TFS.

### The Defendants File False Criminal Charges and Defame McVey

14. On November 12, 2002, in furtherance of the conspiracy, Jesus Hernandez, Shahin, Quesada, Montiel, Cantu, and Calderon caused City Watch, FBI, LDC, and Servicios to file false and defamatory statements that caused the issuance of Mexican

criminal complaints against Plaintiff McVey, who was then president of TFS Fire &
Security's operations in Latin America. These defendants caused City Watch, FBI, LDC,
and Servicios to later reject ADT Mexico's offer to arbitrate certain outstanding disputes.

15. On the basis of false testimony from Jorge Hernandez, Espinola, and others, a
Mexican judge accepted the dealers' criminal charges and issued a warrant for the arrest
of McVey on March 6, 2003. Under Mexican law, once arrested under these charges,
McVey would be incarcerated without possibility of bail until final judgment after trial,
which would likely not occur for at least two years. On advice of counsel, McVey left
Mexico prior to arrest, and thereafter he was unable to carry out his Mexico-related
employment duties.

16. On March 29, 2003, the Defendants and others had a meeting in Mexico with
TFS officials to discuss their demands. At this meeting, the Defendants informed TFS
that unless it agreed to pay them US $73 million, they would continue with their
campaign of filing false criminal charges against TFS and ADT executives and attorneys
and would destroy ADT's business in Latin America.

17. In April 2003, Defendants made defamatory statements in Florida that caused
the publication in Florida of an article in the May 1, 2003 edition of the *Palm Beach Post*.
In this article, Defendants falsely claimed that they had originated half of ADT's Latin
American alarm contracts and that ADT had engaged in a "pattern of unethical and
possibly criminal behavior." Articles describing the fraudulently-induced arrest of
McVey also appeared in the Wall Street Journal, Fox News, and other publications
circulated in Florida.

18. On or before March 2004, a Mexican court issued an order ("*amparo*") quashing the warrant against McVey on procedural grounds. However, Jesus Hernandez has threatened that, unless ADT and TFS agree to pay Defendants the monies they have demanded, he will get the judge to issue new warrants and will cause other dealers who have joined in the conspiracy to file additional criminal and civil charges in other locations throughout Mexico.

### *The Defendants File False and Defamatory Criminal Charges Against TFS' Finance Director and ADT's Attorney*

19. In July 2003, in furtherance of the conspiracy, Jesus Hernandez and Shahin caused City Watch to file a false and defamatory statement that caused the issuance of a criminal complaint against Francisco Javier Tamayo ("Tamayo"), the finance director for TFS Latin America, and against ADT's outside counsel, Jose Abascal Zamora ("Abascal"). The alleged "crime" is that Abascal successfully negotiated the inclusion of an arbitration clause in the dealer agreement that City Watch voluntarily executed. The complaint asserted that Tamayo instructed Abascal to insert an arbitration clause in the dealer agreements with the intent of disadvantaging dealers in any disputes with ADT. The complaint further alleged that arbitration would be unfair because Abascal is an officer of the Arbitration Commission of the Mexico City Chamber of Commerce ("Canaco"), the entity stipulated in the dealer agreements to administer any arbitration (even though Abascal would not be an arbitrator or have any role whatsoever in any arbitration between ADT and a dealer).

20. On the basis of false testimony from Jorge Hernandez, Espinola, and others, a Mexican judge issued arrest warrants for Tamayo and Abascal on February 13, 2004. Tamayo was arrested the following day. While in custody and being transported to jail, a

private attorney engaged by the Defendants was permitted to question Tamayo. The attorney and other individuals told Tamayo that he would be able to be released on bail, but warned that unless TFS agreed to "settle" Defendants' demands, other actions would follow where the arrested would not be released on bail.

21. On February 15, Tamayo was released on a $1.5 million bail bond with a 10% cash deposit. Subsequently, in April 2004, an appeals court vacated the arrest warrant against Tamayo.

### The Defendants File False and Defamatory Criminal Charges Against Arbitrators and Attorneys

22. In accordance with the dealer agreements, ADT Mexico instituted arbitration proceedings against certain dealers who are indebted to ADT Mexico. One such arbitration was commenced against former dealer Sistemas de Seguridad Guardian Satelite, S.A. de C.V. ("Alarmas Guardian") and its owners.

23. After prevailing in its arbitration proceedings against Alarmas Guardian and certain other dealers, ADT Mexico initiated a civil action to collect the arbitral awards. In response, and in furtherance of the conspiracy, Jesus Hernandez and the managers of Alarmas Guardian caused Alarmas Guardian to file a false and defamatory statement that caused the issuance of a criminal complaint against the arbitrators and ADT Mexico's attorneys. The charges remain pending against these arbitrators and attorneys, thus seriously impairing the ability of TFS and ADT to arbitrate these disputes and to execute upon arbitral awards.

### *The Defendants Cause Alert 24 to File False and Defamatory Criminal Charges Against ADT Executives and Attorneys*

24.  In March 2004, in furtherance of the conspiracy, Jesus Hernandez caused Alert 24, LLC, a Texas limited liability company that he has stated he controls, to file a false and defamatory statement that initiated in Mexico City a Notarial Order ("*Requerimiento Notarial*") aimed at triggering a criminal prosecution against Tamayo, at least four other ADT executives, and at least two of ADT's outside attorneys, Jose Abascal and Miguel Bernal.

25.  Alert 24 claims it has been assigned the rights to security equipment which it fraudulently alleges has been converted by ADT Mexico from eleven former dealers, including the four dealerships (City Watch, FBI, Servicios and LDC) run by Defendants Shahin, Quesada, Montiel, Cantu, and Calderon.

26.  Alert 24's proceeding remains pending and therefore ADT's executives and attorneys are under threat of imminent arrest, unless they give in to Defendants' extortion by paying the demand for US $73 million.

### *The Defendants Threaten Azze With Physical Harm*

27.  In November 2003, in furtherance of the conspiracy, Defendant Espinola telephoned Plaintiff Azze in Florida and left a message on Azze's answering machine. When Azze returned the call, Espinola relayed a threat that Azze would suffer bodily harm if he traveled to certain places in Latin America.  Specifically, Espinola said he knew that certain individuals "with Italian surnames" were looking for Azze and planning to hurt him.  Based upon Espinola's statements, Azze understood that he would suffer bodily harm if he traveled to Latin America.  As a result, Azze has curtailed his travels to Latin America, thus seriously impairing the operations of ADT and TFS in that region.

28.  On February 26, 2004, Espinola sent an e-mail message to Florida to the Boca Raton office of Ed McDonough, TFS' Security Director, and repeated the threats of physical harm to Azze.  In this e-mail message, Espinola wrote that certain former dealers in Latin America had "developed violent thoughts" against Azze.  Espinola added that one unnamed former dealer who "had the means of fulfilling his threat" said that Azze "will be in trouble when coming to Argentina."

### *The Defendants Commit Further Acts of Extortion*
### *in Furtherance of the Criminal Conspiracy*

29.  In February and March 2004, after Defendants had filed the above-mentioned false Mexican criminal charges, Defendant Emilio Espinola sent three e-mails to Florida to TFS CEO David Robinson.  In these e-mail messages, Espinola threatened that, unless their demands were met, Defendants would continue to file additional criminal prosecutions against TFS and ADT personnel.  He specifically claimed that Dario Santana, a Florida resident who is the president of TFS Fire & Security – Latin America, would be arrested if he left the United States, because "Mexican Justice works with the INTERPOL everywhere in the world."  He further threatened that "things are getting uglier and may eventually involve you personally."  He advised that TFS's "size and power may be useless in dealing with the Mexican Judicial System bureaucracy," where "long and lasting friendship relations are far more important" than a foreign company. He advised TFS to "settle" with the former dealers "before it becomes worse or at least more expensive."  After Robinson failed to respond to his first two e-mails, defendant Espinola in his third e-mail demanded responses to several questions and threatened to make false and defamatory statements about ADT and TFS to "reporters in New York."

30. On February 17, 2004, Defendants' attorney Jorge Hernandez Borbolla sent an e-mail to ADT's Rob Costello in Florida and, after noting the recent arrest and incarceration of Tamayo, threatened that unless ADT reached an agreement with the former dealers "orders of apprehension against ADT's top management in Mexico shall continue in different jurisdictions."

31. On March 29, 2004, Defendants and other former dealers and their attorneys had a meeting to discuss their further strategy. They agreed they would continue with their campaign of extortion and the filing of false criminal charges against Tyco and ADT executives and attorneys.

32. Shortly after this meeting, on March 31, 2004, one of the Defendants or one of their co-conspirators, using the name Juan Perez, sent an e-mail to Tamayo and four other ADT executives and threatened them with multiple criminal prosecutions. Perez claimed that 30 former dealers had joined the conspiracy, so that "each of you will have 30 accusations, 30 detentions, 30 visits to the jail, and I hope, that ADT pays 30 bails for each and every one of you. I can't see what you gain so that your families have to put up with all that is coming your way." He stated that this was their "last chance" and concluded that the five executives had three options: 1) stay the current course and "end up in jail," 2) change sides and "speak with our attorneys," or 3) go on strike until the "gringos understand and pay us what we are owed."

*Damages*

33. As a result of Defendants' conduct, Plaintiffs have sustained damages. These damages include, but are not limited to, the disruption of ADT's and TFS's business activities, the disruption of McVey's professional career, additional expenses for security

and protection of TFS and ADT personnel, legal and expert fees, and damage to McVey's individual reputation and to TFS's and ADT's commercial reputation.

## CAUSES OF ACTION

### Count I – RICO

34. Plaintiffs incorporate the prior allegations of this Complaint by reference.

35. Each act of extortion, each threat of bodily harm, each false judicial filing, and each other wrongful act set forth above is an act of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and criminal statutes referenced therein, including but not limited to FSA 836.05 (threats and extortion), FSA 784.011 (threats of physical assault), FSA 914.22(f) (procuring false testimony), and 18 U.S.C. 1951 (extortion and threats of physical violence). As a whole, these continuing acts, which have now continued for well over a year, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

36. City Watch, FBI, LDC, Servicios, and Alert 24 are enterprises within the meaning of 18 U.S.C. §1961(4). Moreover, the Defendants and others have joined together as a union or group of individuals associated in fact. This association in fact ("AIF"), which has a distinct and continuing organization, planned meetings, and retained outside attorneys, is also an enterprise within the meaning of 18 U.S.C. §1961(4).

37. Jesus Hernandez and Shahin, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of City Watch, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

38. Jesus Hernandez and Quesada, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of FBI, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

39. Jesus Hernandez and Calderon, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of LDC, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

40. Jesus Hernandez, Montiel and Cantu, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of Servicios, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

41. Jesus Hernandez, in conspiracy with the other Defendants and other persons, has conducted or participated in the conduct of the affairs of Alert 24, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

42. All Defendants, in conspiracy with each other and with other persons, have conducted or participated in the conduct of the affairs of AIF, an enterprise whose activities involve and affect foreign commerce, through the above-described pattern of racketeering activity, in violation of 18 U.S.C. §§1962(c)&(d).

43. By reason of the above-described RICO violations, Plaintiffs have been damaged in their business and property, in the United States, Mexico, and elsewhere in

Latin America.  Plaintiffs are entitled to declaratory and injunctive relief and to recover threefold the damages so sustained, plus costs and attorney's fees, pursuant to 18 U.S.C. §1964(c).

### *Count II – Civil Remedies for Criminal Practices Act*

44.  Plaintiffs incorporate the prior allegations of this Complaint by reference.

45.  Each act of extortion and defamation, each threat of bodily harm, each false judicial filing, and each additional wrongful act set forth above is an act of criminal activity within the meaning of FSA 772.102(1) and criminal statutes referenced therein, including but not limited to FSA 836.05 (threats and extortion), FSA 784.011 (threats of physical assault), FSA 914.22(f) (procuring false testimony), and 18 U.S.C. 1951 (extortion and threats of physical violence).  As a whole, these continuing acts, which have now continued for well over a year, constitute a pattern of criminal activity within the meaning of FSA 772.102(5).

46.  City Watch, FBI, LDC, Servicios, and Alert 24 are enterprises within the meaning of FSA 772.102(4).  Moreover, the Defendants and others have joined together as a union or group of individuals associated in fact.  This association in fact ("AIF"), which has a distinct and continuing organization, planned meetings, and retained outside attorneys, is also an enterprise within the meaning of FSA 772.102(4).

47.  Jesus Hernandez and Shahin, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of City Watch through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

48. Jesus Hernandez and Quesada, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of FBI through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

49. Jesus Hernandez and Calderon, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of LDC through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

50. Jesus Hernandez, Montiel, and Cantu, in conspiracy with the other Defendants and other persons, have conducted or participated in the conduct of the affairs of Servicios through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

51. Jesus Hernandez, in conspiracy with the other Defendants and other persons, has conducted or participated in the conduct of the affairs of Alert 24 through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

52. All Defendants, in conspiracy with other persons, have conducted or participated in the conduct of the affairs of AIF through the above-described pattern of criminal activity, in violation of FSA 772.103(3)&(4).

53. By reason of the above-described violations of FSA 772.103(3)&(4), Plaintiffs have been damaged in their business and property, in the United States, Mexico, and elsewhere in Latin America. Plaintiffs are entitled to recover threefold the damages so sustained, in an amount to be proved at trial, plus costs and attorney's fees, pursuant to FSA 772.104, against all Defendants jointly and severally.

### *Count III – Civil Conspiracy*

54. Plaintiffs incorporate the prior allegations of this Complaint by reference.

55. Defendants entered into the above-described agreements with each other for the unlawful purpose of extorting money from Plaintiffs and avoiding their just debts, with each Defendant knowing or recklessly disregarding that wrongful and criminal means would be used to carry out the schemes against Plaintiffs.

56. Each Defendant has committed one or more wrongful acts in furtherance of the conspiracy, such as sending extortionate e-mails and making extortionate phone calls to Florida, causing the filing of fraudulent criminal complaints, and providing false testimony in connection therewith. The combination of the Defendants gave them a peculiar power to coerce the Plaintiffs which any individual Defendant standing in like relation to the Plaintiffs would not have had.

57. In furtherance of the conspiracy, Defendants have acted fraudulently, in bad faith, and with malice.

58. Plaintiffs have suffered damages as a proximate result of Defendants' conspiracy, and Plaintiffs are entitled to an award of compensatory damages against all Defendants jointly and severally.

### *Count IV – Defamation*

59. Plaintiffs incorporate the prior allegations of this Complaint by reference.

60. Defendants have made fraudulent and defamatory statements about Plaintiffs to the *Palm Beach Post* and other newspapers, to various prosecutorial and judicial bodies, and to others. Due to the fraudulent, bad faith, and malicious nature of

Defendants' actions, Defendants' statements to prosecutors and judges are not subject to any privilege.

61.  Plaintiffs have suffered damage to their reputations and to their business as a proximate result of Defendants' defamatory statements, and Plaintiffs are entitled to an award of compensatory damages against all Defendants jointly and severally.

## PRAYER FOR RELIEF

WHERFORE, for the reasons set forth above, after due proceedings, Plaintiffs respectfully request declaratory and injunctive relief, compensatory damages, costs, attorneys' fees, pre and post judgment interest, and all additional relief to which they may be entitled.  Plaintiffs reserve their right to amend this complaint to request an award of punitive damages.

Dated:  June 2, 2004

BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiffs
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida  33301
(954) 356-0011 telephone
(954) 356-0022 facsimile

By:  _____
Stephen N. Zack
Florida Bar No. 145215
Stuart H. Singer
Florida Bar No. 377325

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

## 04-80516

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV-COHN

**I. (a) PLAINTIFFS**

TYCO FIRE + SECURITY, LLC, JUN 17 2004
PHILLIP MCVEY AND GEORGE AZZE
CLARENCE MADDOX
USDC / SDFL/WPB

**DEFENDANTS**

JESUS HERNANDEZ ALCOCER, JORGE HERNANDEZ TORRES, MAGISTRATE JUDGE
EMILIO ESPINOLA, RAIF SWAISE, GONZALO QUESADA
SUAREZ, DAVID CALDERON ISLAS, LUIS MONTIEL VILCHIS,
HORACIO CANTU DIAZ, JOHN DOES 1 THROUGH 10

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Palm River County
(EXCEPT IN U.S. PLAINTIFF CASES)
FLORIDA

West Palm Beach 04-80516-CIV-COHN Snow

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
STEPHEN ZACK AND STUART SINGER
BOIES SCHILLER + FLEXNER LLP
401 E. LAS OLAS BLVD., #1200, FT. LAUD, FL 33301

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only) |
|---|---|

II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage | B☐ 690 Other | **A LABOR** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other B☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 555 Prison Condition | | | A OR B |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 U.S.C. Sec. 1961, 1962, et seq.: VIOLATIONS OF RICO BY EXTORTION, FALSE JUDICIAL FILINGS AND THREAT OF BODILY HARM, AMONG OTHERS.

LENGTH OF TRIAL via 30 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $ IN EXCESS OF JURISDICTIONAL LIMITS
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S)** (See instructions)
**IF ANY**
JUDGE _____ DOCKET NUMBER _____

DATE JUNE 2, 2004
SIGNATURE OF ATTORNEY OF RECORD
ANTONIO CASTRO

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

$150.00   902324
06/03/04